**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| KIMBERLY STARLING, on behalf of herself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ALLSTATE INSURANCE COMPANY,<br><br>Defendant. | Case No.: 1:25-cv-4000<br><br>Honorable Judge Matthew F. Kennelly |

# PLAINTIFF'S MOTION TO COMPEL DEFENDANT TO PRODUCE DISCOVERY

## (REDACTED VERSION)

Max S. Morgan
THE WEITZ FIRM, LLC
1515 Market Street #1100
Philadelphia, PA 19102
Telephone: (267) 587-6240
Facsimile: (215) 689-0875
max.morgan@theweitzfirm.com

Thomas A. Zimmerman, Jr.
Jeffrey D. Blake
ZIMMERMAN LAW OFFICES, P.C.
7199 S. Kingery Highway, #1148
Willowbrook, IL 60527
Telephone: (312) 440-0020
Facsimile: (312) 440-4180
tom@attorneyzim.com
jeff@attorneyzim.com

*Counsel for Plaintiff and the Putative Classes*

Plaintiff Kimberly Starling ("Starling" or "Plaintiff") and Defendant Allstate Insurance Company ("Allstate" or "Defendant") (collectively, the "Parties") have met and conferred numerous times on the issues raised below—including on September 19, 2025, November 5, 2026, January 22, 2026, and April 9, 2026—but have not been able to resolve their disagreements. Starling files this motion to compel Allstate to produce discovery pursuant to Fed. R. Civ. P. 37, namely:

1. Call detail records, audio recordings, and lead information related to the calls placed by its vendor, Navlan PR, LLC d/b/a InboundCD ("InboundCD"). Allstate has contractual rights to demand the data from InboundCD, which remains an *active* vendor of Allstate, so these records are in Allstate's possession, custody, and control.

2. Data and documents regarding leads transferred by InboundCD to Allstate agents in Allstate's systems, including Allstate agent email accounts that Allstate can search.

3. Documents relating to complaints, investigations, and claims that InboundCD was engaged in activity that violated the TCPA. Allstate did not produce anything responsive to this request. Starling learned, via a public third-party litigation, that there is at least one complaint and governmental investigation related to InboundCD that Allstate improperly withheld here.

4. Unredacted versions of Allstate's monthly compliance monitoring reports of InboundCD where Allstate redacted evidence of calls and transfers because it contained "PII" of potential class members.

5. Documents relating to telemarketing scripts. Allstate made approved scripts available to be used by its insurance agencies and vendors. Allstate has not produced its approved scripting.

6. Documents containing communications between InboundCD and InboundCD's principal, Ryan Blackman a/k/a Ryan Daniel ("Blackman") on the one-hand, and Allstate personnel

(all of whom are non-lawyers) on the other hand. Plaintiff believes Allstate has improperly withheld certain communications as privileged and/or work product.[1]

## I. FACTUAL BACKGROUND

On July 16, 2024, Starling received an unwanted and unsolicited telephone call soliciting Allstate insurance using a prerecorded voice message on her cellular telephone in violation of the Telephone Consumer Protection Act, 47 U.S.C.§ 227 ("TCPA"). Complaint ("Compl.") ¶ 18. When she answered her phone, a prerecorded voice played the following message "Hi. This is Jen from Allstate. How are you doing today?" *Id*. ¶ 20. Plaintiff interacted with the prerecorded voice to identify the caller and was transferred to a local Allstate agent, the Deborah Naulls Agency. *Id*. ¶ 27.

Starling filed a lawsuit against Allstate on April 14, 2025, asserting that Allstate was vicariously liable for violations of the TCPA. Allstate represented to Starling that InboundCD, an approved Allstate vendor, was responsible for the phone call she received and that resulted in the transfer to the Deborah Naulls Agency. InboundCD, however, has denied placing the call to Starling's phone number.

Through discovery, Starling has obtained her phone carrier's calling records showing that she indeed received the call she complains of on the date and time in question. After identifying the telephone number used by the Deborah Naulls Agency to accept inbound transfer calls from InboundCD, Starling was able to obtain records from Deborah Naulls Agency's telephone carrier showing InboundCD's outgoing "transfer" of the call placed to Plaintiff from InboundCD to the Deborah Naulls Agency. To date, however, Starling has not been able to obtain the outbound call detail records that relate to the illegal prerecorded calling campaign, *i.e.*, the first portion of the

---

[1] Allstate's Objections and Responses incorporate the text of Plaintiff's requests. The relevant portions of Allstate's Responses to Plaintiff's Discovery are attached hereto as Exhibits A–D.

call that utilized the prerecorded messages.[2] Allstate has not obtained these records from its vendor and has refused to produce other information, such as listings of all of the leads that originated from InboundCD, that could be used to identify the class Starling seeks to certify. The discovery requests in dispute are as follows.

### A. Calling Records and Lead Information

The discovery requests seeking information about the calling campaigns involving InboundCD[3] are summarized below:

- **RFP Nos. 10, 11**: These requests seek recordings of calls with Plaintiff and with any potential lead or customer transferred to Allstate or its agents by InboundCD. Allstate has not produced any recordings of calls.

- **RFP No. 22**: This request seeks call detail records related to the calls originating with InboundCD that were transferred to Allstate and/or its agents. The requested information includes (i) the date and time of the calls, (ii) the caller ID used to place the call; (iii) the content/purpose of the call; (iv) the campaign the call was associated with; (iv) the result of the call; (v) identifying information about the recipient; (vi) audio recording of the call; and (vii) any other information stored by the call detail record. These records are integral to class certification.

- **RFP No. 35**: This request seeks documents that refer to the "online account management system" used by Allstate agents and InboundCD. Allstate's production refences managing leads sourced by vendors, like InboundCD, via such a system.

- **RFP Nos. 37, 38, 39, 41, 42**: These requests seek required reporting documents and compliance data provided by InboundCD to Allstate. Pursuant to Allstate's agreement with

---

[2] Starling suspects that the number appeared on her telephone was "spoofed" in an effort to conceal the caller and the source of the call.
[3] Starling has agreed to limit her requests to InboundCD and does not seek information about other Allstate telemarketing vendors other than InboundCD and any related entities.

InboundCD, Allstate required InboundCD to submit "scorecards" and monthly lead data transaction reports. Allstate has refused to produce these monthly reports and lead information.

- **RFP Nos. 48, 50; Interrogatories 12, 13:** These requests seek information identifying the leads provided by InboundCD to Allstate and/or its agents. Allstate has a lead management system and also a quoting system that retains information about the leads it receives. Starling seeks to identify the leads sourced by InboundCD that were transferred to Allstate and/or its agents. Starling also seeks information showing which agencies received leads from InboundCD.

### B. Complaints

The discovery requests seeking information related to complaints, do-not-call requests, or vendor failures to comply with the law are summarized below:

- **RFP Nos. 14 and 15**: These requests seek information about InboundCD's failures to abide by Allstate's policies, agreements, and instructions related to outbound calling campaigns performed on behalf of Allstate and/or its agents. Such documents are relevant to show Allstate's knowledge and involvement in the campaigns. Allstate has refused to produce documents other than those specifically related to Plaintiff.

- **RFP No. 16**. This request seeks documents related to complaints and do-not-call requests, including governmental investigations. Plaintiff has limited this request to complaints associated with InboundCD or similar prerecorded calls. Allstate has refused to produce documents other than those specifically related to Plaintiff.

- **RFP No. 34**: This request seeks communications from InboundCD to Allstate via the Allstate email address associated with Complaint Management.

- **RFP No. 36:** This request seeks documents that refer to the returns of leads or credits being provided for bad leads provided by the supplier. Starling agrees to limit this request to leads related to InboundCD.

### C. Scripts

The discovery requests seeking information related to approved scripts are summarized below:

- **RFP Nos. 12 and 33**: These requests seek telemarketing scripts approved by Allstate and provided to third parties for use in customer recruitment or lead generation, including those made available by Allstate in its script library. Allstate has refused to produce these scripts.

### D. Communications

The discovery requests seeking information related to communications between Allstate (and/or its agents) and InboundCD are summarized below:

- **RFP No. 18:** This request seeks internal communications regarding InboundCD, the vendor that called Plaintiff.

- **RFP No. 40:** This request seeks communications between InboundCD and Allstate and/or its agents related to consumer or lead information.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 26(b)(1) allows the parties to obtain discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." *Gritters v. Ocwen Loan Servicing, LLC,* 14 CV 916, 2016 WL 11268489, at *2 (N.D. Ill. Jan. 26, 2016). A party may file a motion to compel discovery under Rule 37 of the Federal Rules of Civil Procedure where another party fails to respond to a discovery request or where the party's response is evasive or incomplete. *Kodish v. Oakbrook Terrace Fire Prot. Dist.*,

235 F.R.D. 447, 449–50 (N.D. Ill. 2006). In ruling on motions to compel discovery, "courts have consistently adopted a liberal interpretation of the discovery rules." *Id.* at 450. The party objecting to discovery bears the burden to show the requested discovery is improper. *Baxter Int'l, Inc. v. AXA Versicherung*, 320 F.R.D. 158, 161 (N.D. Ill. 2017).

## III. ARGUMENT

### A. Allstate has the contractual right to require InboundCD to provide CDRs of its calling activities and records of the leads it provided to Allstate agencies, and therefore is required by Rule 34 to produce them to Plaintiff

"Courts in TCPA cases have repeatedly held that outbound call lists which contain the names and telephone numbers of plaintiffs and putative class members called by defendant or by others on defendant's behalf are relevant to numerosity, commonality, and typicality and are therefore discoverable." *Gebka v. Allstate Corp.*, No. 1:19-cv-06662, 2021 WL 825612, at *7 (N.D. Ill. Mar. 4, 2021). "Under Federal Rule of Civil Procedure 34(a)(1), a party is required to produce documents that are within its "possession, custody, or control." *Meridian Laboratories, Inc. v. OncoGenerix USA, Inc.*, 333 F.R.D. 131, 135 (N.D. Ill. 2019). "On the issue of control, it is well-settled that a party need not have actual possession of the documents to be deemed in control of them; rather, the test is whether the party has a legal right to obtain them." *Id*. "Parties need only have the legal right to obtain the evidence" for a court to compel its disclosure. *Oil-Dri Corp. of Am. v. Nestle Purina Petcare Co.*, 16 C 09179, 2017 WL 1436965, at *4 (N.D. Ill. Apr. 24, 2017). "Control does not require that the party have legal ownership or actual physical possession of the documents at issue, but rather 'the right, authority or practical ability to obtain the documents from a non-party to the action.'" *Bush v. Ruth's Chris Steak House, Inc.*, 286 F.R.D. 1, 5 (D.D.C. 2012). A party is deemed to have "possession, custody, or control of" documents within the meaning of Rule 34, when it has the "legal right to obtain the documents sought."

*Robinson v. Moskus*, 491 F. Supp. 3d 359, 361 (C.D. Ill. 2020). Courts have construed contractual provisions relating to audit rights to establish such control. *Lofton v. Verizon Wireless (Vaw) LLC*, No. 13CV05665YGRJSC, 2014 WL 10965261, at *2 (N.D. Cal. Nov. 25, 2014).

Here, the Allstate Select Vendor Program ("ASVP") Supplier Agreement, attached hereto as Exhibit E, between InboundCD and Allstate, and its exhibits, establish Allstate's control over the documents requested in RFPs 10, 11, 22, 48, 50, and Interrogatories 12 and 13. For example, ALLSTATE_000003 has a provision that states: "[redacted]." That broad language covers the requested information here. And, based on the Parties' discussions to date, it is Plaintiff's understanding that InboundCD is an *active* vendor for Allstate. Allstate should obtain the information from its *active* vendor and produce it to Plaintiff.

Furthermore, ALLSTATE_000027 enumerates [redacted], which include [redacted]. *See* Exhibit E. Allstate requires that [redacted]. And, ALLSTATE_000028 requires that [redacted]. ALLSTATE_000008 at Section [redacted] provides "[redacted]

[redacted]" Under these contractual provisions, Allstate has a legal right to obtain, and therefore an obligation to produce to Plaintiff, the CDRs, audio recordings, and lead information of InboundCD's calls.

Allstate might respond that Allstate produced a file purportedly received from InboundCD that satisfies its obligations to produce, or that its subpoena issued to InboundCD shows that Allstate is "doing what it can" to obtain InboundCD's CDRs as Plaintiff requested. Neither argument is sufficient. First, the purported CDR file contains what Allstate purports to be a single day's calling activity; not the full relevant time period requested by Plaintiff going back four years prior to the litigation. In addition, there are only two columns in the file: sip_code, and the destination phone number. This is not sufficient to respond to Plaintiff's requests for specifically enumerated fields that are typically contained in CDRs, such as timestamp, called party's identifying information, call duration, originating phone number, call disposition, and notations placed by the telemarketer. *See* RFP 22. And, the document produced is not consistent with the records obtained from InboundCD's telephone carrier (showing the transfer portion of the calls), suggesting the document produced is incomplete or has been altered. Second, Allstate is not taking adequate measures to obtain the data it is contractually entitled to obtain. Instead, Allstate idly watches while Plaintiff has taken extraordinary steps to complete service of subpoenas on InboundCD and its principal, and to serve numerous other subpoenas on phone carriers and others, to support the case for obtaining the CDRs and other information from InboundCD. InboundCD has evaded Starling's many attempts of service, has provided documentation that contradicts its assertions and is inconsistent with records produced by telephone carriers, and still has an ongoing business relationship with Allstate. If the Court orders Allstate to produce the CDRs, Allstate can

exercise its contractual rights to obtain the complete, accurate data [redacted]. ALLSTATE_00008.

With respect to RFP No. 35, it appears that Allstate maintains a management system for leads supplied by its vendors *See* ALLSTATE_000006. Allstate has, and should produce documents related to this system, to the extent it includes information or leads associated with InboundCD that may be able to associate consumer leads as originating with InboundCD. Further, with respect to Interrogatories 12 and 13, Allstate should be required to identify which agents or agencies utilized the services of InboundCD and the leads that were provided to them from InboundCD. Plaintiff believes this information can be derived from the compliance reports submitted by InboundCD to Allstate – which Allstate is withholding.

With respect to RFPs 37, 38, 39, 41, and 42, the documents requested include compliance related documents and reporting provided to Allstate by InboundCD related to the marketing campaigns at issue here. Allstate objects by falsely claiming InboundCD did not dial Plaintiff's phone number. But, discovery has shown that Plaintiff received the call at issue and that it was transferred by InboundCD to the Deborah Naulls Agency. Allstate should be required to produce the "scorecards," "monthly lead data transaction reports," and compliance data sent to Allstate from InboundCD. This information is relevant to identifying class members and/or showing that Allstate knew about the prerecorded call campaign being performed by InboundCD.

### B. Allstate should be compelled to produce its lead information that originated from InboundCD

Allstate's computer systems include a Lead Manager program and a Quoting System. Allstate and its agents use these systems in connection with the production of new insurance policies. Every lead that InboundCD transferred to an Allstate agency ought to have been entered into Lead Manager, and every insurance quote generated by an insurance agent speaking with a

InboundCD-provided lead ought to have been entered into the Quoting System. These leads and quotes evidence potential class members and identify Allstate agents using InboundCD. These persons are witnesses with relevant knowledge, and the documents go toward creating a class list of persons who were dialed by InboundCD and transferred to Allstate and/or its agents.

Allstate has objected to producing InboundCD-provided lead and quoting data from these systems because, in Allstate's opinion, it is burdensome. Plaintiff's response is that in the *Gebka* case, the Court ordered Allstate to produce emails sent to agents containing lead information. *Gebka v. Allstate Corp.*, No. 19-CV-06662, 2021 WL 825612, at *8 (N.D. Ill. Mar. 4, 2021) ("RMG sent the confirmation e-mails and spreadsheets to Brian Saving to document the leads that RMG was generating").

In this case, Allstate asserts that InboundCD did not send an email in connection with Plaintiff's lead on July 16, 2024. Karon King, the Allstate insurance agent who spoke with Plaintiff on July 16, 2024, testified that usually an email was sent. *See* Deposition of Karon King Tr. 42:7–44:10, attached hereto as Exhibit F. Allstate should be required to produce all emails or other documents from InboundCD sending transfer/lead data to Allstate agents, just as the Court ordered in *Gebka*. If in fact there are no emails, then the Lead Manager and Quoting System would still contain the relevant data. To the extent Allstate asserts that it would be burdensome to locate InboundCD's leads in the system, Plaintiff responds that Allstate can start with the lists of transfers in every month's compliance reports. Or, Allstate can exercise its audit rights to demand that InboundCD provide such documentation to Allstate to comply with its discovery obligations.

**C. Allstate's PII redactions are improper**

Allstate has withheld and redacted identifying information and phone numbers of putative class members from monthly compliance reports, making them unusable. Allstate should be

compelled to produce unredacted versions of these documents. InboundCD provided monthly reports of its call activities and leads it transferred to Allstate and/or its agents. The call reports and lead data were entirely redacted as "PII." That is improper.

Courts "generally grant motions to compel where the plaintiffs lack other means to locate such class members absent the sought-after discovery." *Cortez v. Target Corp.*, No. 1:23-CV-01435, 2023 WL 7325965, at *3 (N.D. Ill. Nov. 7, 2023). Courts in TCPA cases have repeatedly held that outbound call lists which contain the names and telephone numbers of plaintiffs and putative class members called by defendant or by others on defendant's behalf are relevant to numerosity, commonality, and typicality and are therefore discoverable. *Gebka v. Allstate Corp.*, No. 19-CV-06662, 2021 WL 825612, at *7 (N.D. Ill. Mar. 4, 2021).

In *Hossfeld v. Allstate Insurance Company*, the court overruled Allstate's objections to providing its internal DNC list containing phone numbers of potential class members. *Hossfeld v. Allstate Ins. Co.*, No. 20-CV-7091, 2021 WL 4819498, at *5 (N.D. Ill. Oct. 15, 2021). The list was necessary to identify the number of putative class members, confirm Article III standing, and evaluate the extent of coordination between Allstate and vendors to demonstrate that Allstate failed to implement adequate internal DNC policies and procedures under TCPA regulations. *Id*.

Here, Allstate should be compelled to produce unredacted versions of the monthly compliance monitoring reports on InboundCD. They evidence outbound calls to potential class members as reported by InboundCD directly to Allstate. Hundreds of pages of the monthly reports are withheld and covered by the words "PII Redacted." The calling activity evidenced in these reports may be crucial to class certification if Plaintiff is unable to locate or obtain a complete outbound calling list from InboundCD or its overseas vendors. By redacting all of the "PII,"

Allstate withholds critical evidence concerning who InboundCD called, for which agencies, and the results of those contacts.

### D. Allstate failed to produce complaints, inquiries, and investigations, pertaining to InboundCD's compliance with telemarketing laws

RFPs 14–16 seek documents relating to the failures, alleged failures, or possible failure of Allstate's vendors or agents to comply with agreements, policies, or other instructions related to outbound calls, and complaints and investigations regarding telemarketing or do-not-call requests. RFP 34 seeks communications from InboundCD to Allstate via the Allstate email address associated with Complaint Management. Finally, RFP 36 seeks documents related to the return of leads or credits being provided for bad leads.

Allstate failed to conduct a reasonable search or withheld responsive documents without an adequate basis. Allstate did not produce responsive information, and Starling identified complaints and investigations, including allegations in other lawsuits, that InboundCD was engaged in robocalling in violation of the TCPA on behalf of Allstate. One lawsuit further alleges that Allstate investigated complaints sent to the FCC that InboundCD was robocalling consumers without their consent. *See* Complaint in *Farwell v. Navlan, LLC*, No. ¶ 3: "Inbound was using robotic technology to call people on Allstate's Do Not Call List and the National Do Not Call Registry"; ¶ 19: "Inbound also used a network of 'robots' to contact unsuspecting consumers"; ¶ 27: "On or about April 13, 2020, Plaintiff was contacted by MaryBeth Warner, a Marketing Lead Consultant at Allstate. Warner was investigating an FCC complaint by a customer that Inbound had robocalled"; attached hereto as Exhibit G.

The documents relating to the interactions between Warner and InboundCD employees were never produced. The internal documents of discussions among Allstate employees regarding InboundCD were never produced. They would be relevant to establish Allstate's knowledge about

InboundCD's marketing practices prior to and during the calls at issue in this lawsuit. *Donnelly v. NCO Fin. Sys., Inc.*, 263 F.R.D. 500, 505 (N.D. Ill. 2009) ("if NCO has been charged with violations on numerous prior occasions, that is certainly relevant to its knowledge of the TCPA and the actions it did or did not take to ensure compliance with the statute.").

Allstate's knowledge of and failure to stop InboundCD's conduct would establish Allstate's vicarious liability and show whether Allstate's violations of the TCPA were willful and knowing. *See* 47 U.S.C. § 227(b)(3) (awarding treble statutory damages for violations that are willful or knowing). Moreover, the single FCC complaint is likely to be just the tip of the iceberg. Only Allstate and InboundCD know the number of complaints (*e.g.*, direct from consumers, formal inquiries, or other TCPA lawsuits against Allstate in which the leads originated from InboundCD) that are responsive to Plaintiff's request.

In addition, Allstate did not produce emails related to the complaint management system related to InboundCD or any refund/return requests related to leads sourced by InboundCD in response to RFPs 34 and 36. Allstate should be compelled to conduct a reasonable search for responsive documents and produce the full extent of responsive documents. Documents related to complaints are particularly relevant here because they can show what Allstate knew or should have known about the calling campaigns at issue.

### E. Allstate is withholding its approved scripts

Allstate has refused to produce copies of its approved scripts made available to its vendors, such as InboundCD. Allstate should be compelled to produce this relevant information. RFP 12 seeks "any scripts [Allstate] provided to any thirds party, reviewed, or approved for use by the third party or its partners or agents . . . ." RFP 33 seeks copies of the "legally-approved scripts available on the ASVP site script library." Allstate's Agreement with InboundCD references a

library of scripts that are made available to vendors. These scripts, made available to InboundCD, should be produced so that Starling can compare them to what was said on the call she received from Allstate as well as any other recordings Allstate produces related to InboundCD. Scripts, and their approval, are relevant to issues of vicarious liability. *See, e.g.*, *Johansen v. Liberty Mut. Grp.*, No. 15-cv-12920, 2017 WL 6045419 (D. Mass. Dec. 6, 2017) (compelling production of scripts in TCPA case). *See also In re Dish Network, LLC*, 28 FCC Rcd. 6574, 6592 ((“[i]t may also be persuasive that the seller approved, wrote or reviewed the outside entity’s telemarketing scripts.”) Allstate should be compelled to produce the scripts it made available to InboundCD.

**F. Allstate wrongfully claimed privilege over communications with Blackman**

Allstate should be compelled to make a complete production of communications between InboundCD (and its agents) and Allstate (and its agents)[4] as well as internal communications about InboundCD and their calling campaigns. Allstate has withheld as attorney-client privileged certain communications that occurred exclusively between non-lawyers: Ryan Blackman, Thomas Witte, and Alan Wroblewski. *See* Allstate’s Privilege Log, ALLSTATE_000285, 286, 1076–1081, 1648, attached hereto as Exhibit H.

For Privilege Log entries ALLSTATE_1076–1081 and 1648, Allstate asserts attorney-client privilege and work product over “confidential correspondence with in-house/outside counsel concerning a legal matter.” *See* Exhibit H. There are no attorneys identified on the communications, so this description is misleading. The inclusion of attorneys was required to maintain the privilege. In addition, Blackman is not an employee of Allstate and is the principal of InboundCD—a third party. As a result, any privilege would be waived by disclosure to or from him.

[4] For each of the independent agencies, Allstate manages and maintains their email addresses and thus has possession, custody and control of such communications.

For Privilege Log entries ALLSTATE_000285–286, Allstate seeks to withhold communications exclusively between Wroblewski and Blackman (non-lawyers) that were made purportedly "relating to in-house counsel's investigation of complaint" that were attached to an Investigative Summary, under the common interest doctrine. *See* Exhibit H.

The common interest doctrine only applies when the parties undertake a joint effort with respect to a common legal interest. "The key consideration is that the nature of the interest be identical, not similar, and be legal, not solely commercial." *In re Dealer Mgmt. Sys. Antitrust Litig.*, 335 F.R.D. 510, 515 (N.D. Ill. 2020). In this case, InboundCD and Allstate do not have identical interests. Allstate was investigating InboundCD pursuant to its contractual rights to monitor and investigate claims of TCPA violations in order to determine whether InboundCD breached its contract. Allstate should be compelled to produce all internal communication about InboundCD that do not include any attorney and/or were made prior to this lawsuit in response to RFP No. 18.

## IV. CONCLUSION

For the reasons set forth herein, Plaintiff requests that the Court issue an Order compelling Allstate to provide complete responses to Interrogatories 12 and 13 and RFPs 10-12, 14-16, 18, 22, 33-39, 40-42, 48 and 50; award Plaintiff her attorneys' fees associated with this motion; and for any other relief the Court deems just.

Plaintiff KIMBERLY STARLING, on behalf of herself and others similarly situated,

By: *<u>/s/ Max S. Morgan</u>*

Max S. Morgan
THE WEITZ FIRM, LLC
1515 Market Street #1100
Philadelphia, PA 19102
Telephone: (267) 587-6240
Facsimile: (215) 689-0875
max.morgan@theweitzfirm.com

Thomas A. Zimmerman, Jr.
Jeffrey D. Blake
ZIMMERMAN LAW OFFICES, P.C.
7199 S. Kingery Highway, #1148
Willowbrook, IL 60527
Telephone: (312) 440-0020
Facsimile: (312) 440-4180
tom@attorneyzim.com
jeff@attorneyzim.com

*Counsel for Plaintiff and the Putative Classes*