**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| KIMBERLY STARLING, on behalf of herself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ALLSTATE INSURANCE COMPANY,<br><br>Defendant. | Case No.: 1:25-CV-4000<br><br>Honorable Judge Matthew F. Kennelly |

**DEFENDANT ALLSTATE INSURANCE COMPANY'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL DISCOVERY**

Defendant Allstate Insurance Company ("Allstate"), by counsel, hereby responds to Plaintiff Kimberly Starling's ("Plaintiff" and "Starling") Motion to Compel Discovery and states:

## I. **FACTUAL BACKGROUND**

On April 14, 2025, Plaintiff brought an action against Allstate alleging that it violated the Telephone Consumer Protection Act ("TCPA") when, on July 16, 2024, she received a single call on her cell phone (number ending in 6140), which she alleges is on the National Do Not Call Registry. Starling further alleges that she heard a pre-recorded voice before being transferred to Karon King of Deborah Naulls Agency, where she was solicited with an Allstate insurance quote.

Early in the case, on July 31, 2025, Allstate's counsel proposed that the parties enter into an ESI protocol, to avoid the types of disputes that have since arisen between the parties and to ensure an orderly discovery process. Counsel for Plaintiff replied stating that "I dont [*sic*] think the protocol and the burdens it imposes is necessary or proportional here." Therefore, the parties did not enter into an ESI protocol and, when the use of search terms and custodians was raised by counsel for Allstate, Plaintiff's counsel refused to negotiate those parameters, seeking to leave the burden solely on Allstate to make such decisions.

Plaintiff then served her First Set of Discovery Requests on June 17, 2025, and Allstate responded on July 30, 2025. Plaintiff served two subsequent sets of discovery requests to which Allstate also responded. On October 3, 2025, Allstate proposed search terms, custodians, and a date range to Plaintiff, who did not object or otherwise reply to the parameters being used. Using those parameters, Allstate substantially completed its document production on December 5, 2025. To date, Allstate has produced approximately 1,200 documents and over 20,000 pages of responsive material.

In the December 4, 2025 Joint Status Report, Allstate notified the Court that, based upon

the information learned to date in discovery and representations made by InboundCD, the vendor believed to have been the party that transferred the call in question, Allstate was unable to identify any evidence that the subject telephone number actually received the call referenced in the Complaint. This was further bolstered by the depositions of Deborah Naulls, Karon King and Mary Beth Warner, a former Allstate employee. All the deponents testified that they were unaware of InboundCD using artificial voice and/or prerecorded messages. When preparing the December 2025 Joint Status Report, Allstate conferred with Plaintiff's counsel regarding whether Plaintiff possesses an individual claim and whether she can therefore function as a purported class representative and Allstate continues to be without any evidence, despite the productions to date made by itself and several third parties, that InboundCD actually dialed Plaintiff's telephone number. While Plaintiff surmises that InboundCD may have used a spoofed number to avoid detection, there is no evidence of that and it is as or more likely that InboundCD dialed a legitimate number not on the DNC list that, for whatever reason, had been set up to forward to Plaintiff's number. If the latter is the case, then there is not even an individual claim, let alone class claims.

Plaintiff initiated an enforcement action against InboundCD and its CEO Ryan Daniel (Blackman) to obtain call records, customer leads, and additional responsive documentation. A true and accurate copy of this enforcement action is attached hereto as **Exhibit A.**

## II. LEGAL STANDARD

The court has "broad discretion" in reviewing a motion to compel the production of requested discovery materials, *Meyer v. S. Pac. Lines*, 199 F.R.D. 610, 611 (N.D. Ill. 2001), and should "independently determine the proper course of discovery based on the arguments of the parties," *Gile v. United Airlines, Inc.,* 95 F.3d 492, 496 (7th Cir. 1996). Rule 26(b) governs the scope of discovery and provides that the "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs

of the case." Fed. R. Civ. P. 26(b)(1). When assessing proportionality, the court may consider the "importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefits." *Sols. Team v. Oak St. Health, MSO, LLC*, No. 17 CV 1879, 2021 WL 3022324, at *2 (N.D. Ill. July 16, 2021) (quotation omitted); *Motorola Sols., Inc. v. Hytera Commc'ns. Corp.*, 365 F. Supp. 3d 916, 924-25 (N.D. Ill. 2019).

## III. ARGUMENT

### a. Allstate Produced the Call Detail Records, Audio Records, and Lead Information in Its Possession, Custody, and/or Control.

#### *i. Allstate Attempted to Exercise Any Control to Request Documents and Information from InboundCD*

Prior to and throughout discovery, Allstate has worked in good faith to obtain responsive documents from InboundCD. On June 4, 2025, Allstate emailed InboundCD's CEO, notifying him of the lawsuit and InboundCD's duty to preserve documents and information. (ALLSTATE-INCD-00010248-00010253). After initially failing to respond, InboundCD eventually contacted Allstate's counsel, and a call was held on August 29, 2025. (ALLSTATE-INCD-00010244).

On November 20, 2025, Allstate's counsel met with InboundCD again via teleconference to discuss the Starling case. (ALLSTATE-INCD-00010257). During this meeting, Allstate's counsel reiterated InboundCD's obligations to provide documentation responsive to this request and suggested that InboundCD retain counsel to represent it with regards to the subpoena served on it by Plaintiff. InboundCD offered to provide the following documents: (1) July 16, 2024 call detail records with time stamps (noting time zone); (2) July 16, 2024 log of calls transferred from InboundCD to Deborah Naulls Agency with time stamps (noting time zone); and (3) documents

and logs maintained in the portal between the Deborah Naulls agency and InboundCD, including list of leads/lead information provided to Deborah Naulls through the portal, users with credentials to the portal, communications between InboundCD and Deborah Naulls' agency in the portal, and recordings of any calls. (ALLSTATE-INCD-00010274-75).

Despite its assurances to provide such documentation, InboundCD failed to do so. To further push for information, on January 5, 2026, Allstate served its own subpoena on InboundCD requesting that it produce documents and sit for a deposition. (ALLSTATE-INCD-00010264-71). InboundCD failed to respond to the subpoena. Only after Allstate's counsel followed up with InboundCD to determine whether they would comply with the subpoena did InboundCD's counsel state that he would not accept service of the subpoena on behalf of his clients, despite the Court allowing service by email of Plaintiff's subpoena. (ALLSTATE-INCD-00010272). That same day, InboundCD provided documents to Plaintiff which they alleged "are not only responsive to the allegations set forth in the Complaint but that confirm that neither [Ryan Daniel nor InboundCD] had any involvement whatsoever in the conduct alleged under the [TCPA]."

Therefore, despite their failure to produce documents timely as promised, InboundCD did ultimately produce a set of documents responsive to Plaintiff's requests. As an example, in response to RFP No. 22, InboundCD produced leads it provided to Allstate in July 2024, which showed that Plaintiff's number was not amongst the leads provided to Allstate. InboundCD also produced documents and lead information kept within its portal shared directly with Deborah Naulls. These documents included leads provided to Deborah Naulls and lead data which included notes regarding the prospect. This information is also responsive to RFP No. 35. Plaintiff argues that "[i]f the Court orders Allstate to produce the CDRs, Allstate can exercise its contractual rights to obtain the complete accurate data in one business day." (Mot. p. 9). However, Allstate already

made that request upon InboundCD, who in response produced call data records from July 16, 2024 and call transfer records from July 16, 2024, which is also responsive to RFP No. 22. Again, none of which showed that InboundCD dialed Starling's number. Allstate has exercised its contractual rights. Plaintiff's concerns about the authenticity of the records are a matter to be addressed to and by InboundCD, not Allstate. By filing its enforcement action in federal court in Puerto Rico, Plaintiff has taken the necessary steps to address its concerns related to InboundCD.

InboundCD produced emails between it and the Naulls agency for the entirety of their business relationship, which only lasted from July 11 through July 22, 2024. Given the nature of the documents, Plaintiff was provided not only with documentation, data, and communications which are directly relevant to her claims, but also provided with information helpful to identify potential class members, if needed. Even after InboundCD provided this information, Allstate's counsel again followed up with InboundCD on March 30, 2026 to request additional documents. (ALLSTATE-INCD-00010320-22). In the most recent letter, Allstate reinforced InboundCD's obligations under the ASVP Agreement and noted InboundCD's obligation to provide responsive material within one (1) day. Allstate's counsel further advised that InboundCD's failure to comply with its obligations may impact its continued participation in the ASVP. *Id.* Shortly thereafter, InboundCD produced additional documents which have been shared with opposing counsel. (ALLSTATE-INCD-00010316-19).

***ii. Plaintiff's Requests Are Not Proportional Because There is No Evidence That InboundCD Called Plaintiff.***

Plaintiff argues that Allstate should be required to produce documents in response to RFP Nos. 10, 11, 22, 35, 36, 37, 38, 39 & 41, which includes additional call detail records, audio

recordings[1], lead information, scorecards, monthly lead data transaction reports and compliance data sent to Allstate from InboundCD relating to the alleged marketing campaign at issue here. The problem lies in that there is no evidence that InboundCD dialed Starling's phone number. Even setting aside the information produced by InboundCD which speaks directly to this issue, when examining the documents, information, and data Plaintiff received from Allstate and other third parties – Naulls, King, phone carriers Spectrum and Telnyx – the evidence does ***not*** show that InboundCD originated or otherwise dialed Starling's phone number. Moreover, Allstate has produced dozens of monthly compliance audits in response, from 2023 to 2025, regarding InboundCD's compliance with TCPA regulations, including pre-recorded calls. In those documents, there is no evidence to suggest that InboundCD engaged in, or Allstate otherwise should have known about, pre-recorded calls. (*Id.*)

To date, Plaintiff has only demonstrated that a call rang on her telephone, that she answered the call, and was transferred to the Naulls Agency, where Plaintiff then expressed interest to receive a quote. However, the key step here – that a call was made to the telephone number listed on the DNC list – is not established by any of the evidence available to date. Considering this, Plaintiff's requests for call records, audio records, and lead information for other calls made to other individuals fail to meet the proportionality standard set forth in Rule 26 of the Federal Rules of Civil Procedure.

In this District, regarding class actions, Courts have held that Rule 26's proportionality standard "supports the notion that pre-certification discovery should not exceed what is necessary to permit the Court to make an informed decision on class certification." *Miner v. Gov't Payment*

[1] As set forth in its responses to Plaintiff's RFP Nos. 10 and 11, Allstate does not have any recordings relating to the July 16, 2024 call. Similarly, in its April 7, 2026 correspondence to Allstate, InboundCD stated that it "does not record phone calls and therefore does not have any call recordings responsive to [Allstate's] request." (ALLSTATE-INCD-00010319).

*Serv., Inc.,* 14-cv-747rop4, 2017 WL 3909508 (N.D.Ill., 2017). In other words, "[d]iscovery must be sufficiently broad to give the plaintiff a realistic opportunity to meet the requirements of class certification, but at the same time, a defendant should be protected from overly burdensome or irrelevant discovery." *Id.* The request sought by Plaintiff goes well beyond discovery permitted under Rule 26 and as allowed by the Court in *Gebka v. Allstate Corp.,* 19-CV-06662, 2021 WL 825612 (N.D. Ill. Mar. 4, 2021)*,* which Plaintiff mainly relies upon.

In *Gebka,* plaintiff brought a suit against Allstate alleging that Allstate or someone on its behalf violated the TCPA by making a call to his cellphone number, which was registered on the Do Not Call List, without his prior express consent. *Gebka,* 2021 WL 825612. Plaintiff further asserted that the agency and vendor involved in the improper calls was the Brian Saving Allstate Agency and vendor RMG. (*Id.* at *5-6). In *Gebka,* Allstate obtained "confirmation emails" from Brian Saving's email address which show the name and other information relating to the leads provided by RMG to Brian Saving. (*Id.* at *6). The Court ordered that Allstate must re-produce these emails to plaintiff unredacted as plaintiff was entitled to this information. (*Id.* at *7). *Gebka* is distinguishable here.

In this case, the agency and vendor related to the alleged singular call at issue in this case is the Naulls Agency and InboundCD. Unlike in *Gebka,* InboundCD did not send emails or spreadsheets with lead information to a Naulls Agency employee's email address. As testified to by Deborah Naulls, lead information was provided to the Agency through a portal established between the Naulls Agency and InboundCD. Allstate does not have access to this portal. Another important distinguishing fact between the instant case and *Gebka* is that, in *Gebka,* one of the redacted lead lists produced by the vendor to the agency identified plaintiff as a live transferred lead, thus substantiating to some extent plaintiff's claim. (*Id.* at *8). No such evidence has been

shown here. No telephone records nor lead lists identify Starling by name or the phone number at issue here. As such, the Court's finding in *Gebka* is not applicable here.

Where plaintiff runs afoul of Rule 26's proportionality standard and the Court's ruling in *Gebka* is that she seeks information for *any and every lead provided to Allstate by InboundCD and any calls transferred to Allstate by InboundCD.* In *Gebka,* the Court specifically denied plaintiff's request when she attempted to obtain such information from agencies unrelated to her claim simply because they used RMG services. The same standard should be applied here. Despite Plaintiff's cellular records and telephone records from the Naulls Agency, Plaintiff still cannot show that InboundCD dialed her number in violation of the TCPA. As such, any requests for Allstate to produce documents from agencies beyond the scope of the allegations in her complaint, when she has yet to establish the existence of an individual claim beyond pure conjecture, is improper under Rule 26 and should not be permitted.

**b. Allstate Also Maintains Its Objection that Plaintiff's Request are Overly Broad and Unduly Burdensome.**

As stated in Allstate's responses to these discovery requests, Plaintiff's requests – specifically, RFP Nos. 48 and 50 and Interrogatories 12 and 13 – are not proportional to the needs of this case under *Gebka* as set forth in Section(a)(i) of this Response. Notwithstanding, even if the Court were to require Allstate to produce documents pertaining to other agencies, Allstate will be unnecessarily and unduly burdened by Plaintiff's overly broad and burdensome requests. As she admits in her Motion, Plaintiff is seeking "to identify the leads sourced by InboundCD that were transferred to Allstate and/or its agent and information showing what agencies received leads from InboundCD." Despite several meet and confers, explanations by Allstate to Plaintiff regarding the unreasonableness and burden of these requests, and Plaintiff's misunderstanding about Allstate's processes and system, Plaintiff remains steadfast in her position built on the

following inaccurate information:

> "Allstate's computer systems include a Lead Manager program and a Quoting System. Allstate and its agents use these systems in connection with the production of new insurance policies. Every lead that InboundCD transferred to an Allstate agency ought to have been entered into Lead Manager, and every insurance quote generated by an insurance agent speaking with a InboundCD-provided lead ought to have been entered into the Quoting System." (Mot., p. 9-10).

Plaintiff's assertions are not accurate, nor are they supported by any reference to a document, witness testimony, or other reliable evidence.

Allstate has 27,400 exclusive agents, who are independent agents and operate independent businesses. (**Exhibit B**, Declaration of Alan Wroblewski, ¶4). These agents may engage with certain third-party vendors to initiate calls to consumers for the purpose of encouraging the purchase of Allstate products. (*Id.* at ¶5). Contracted vendors are third-party vendors who have entered into a contract with Allstate and thus had their practices pre-vetted for assurance regarding TCPA compliance. (*Id.*) Allstate Lead Manager is an application used by some Allstate exclusive agents to receive, view, and track insurance leads—some delivered automatically and others entered manually by agents. (*Id.* at ¶13). However, Allstate does not require agents to enter leads into Lead Manager and leads are not automatically delivered to Lead Manager. (*Id.* at ¶14). In fact, many agents use alternate systems and do not have Lead Manager accounts. (*Id.* at ¶15). Even when agents choose to enter a lead in Lead Manager, there is no mandatory field requiring the identity of the lead source. (*Id.*)

Similarly, agents are not required to create a quote in Allstate's quoting system for each lead they contact. (*Id.* at ¶16). It is commonplace for an agent speaking with a lead from a vendor, such as InboundCD, to not enter data into the Allstate quoting system. (*Id.*)

Considering the sheer volume of Allstate's exclusive agents, and the logistics of Allstate's internal systems as described above, Plaintiff's request is unduly burdensome and not proportional

to the needs of this case. Rather than requiring that Allstate contact all 27,400 independent insurance agents and determine if each has contracted InboundCD for lead services between April 2021 to the present, this information is more readily available from InboundCD.

### c. Allstate Has Produced Documents Relating to Complaints, Investigations, and Claims Against InboundCD.

First, contrary to Plaintiff's allegations, Allstate has produced documents responsive to RFP Nos. 14, 15, 16, 34 and 36. RFP Nos. 14, 15, and 16 seek information about InboundCD's failures, alleged failures, or possible failure to abide by Allstate's policies, agreements, and instructions. Allstate produced monthly audit reports from 2023 to 2025, where InboundCD answered an "Outbound Call and Live Call Transfer Compliance Questionnaire" and provided information about whether it was complying with Allstate's policies relating to outbound calling. Many of these monthly reports included communications between InboundCD and Allstate's third-party compliance vendor AnswerNet, where AnswerNet would then follow up with InboundCD if any of the responses or information provided appeared inconsistent with the law. These conversations and follow-up audits can be seen, as an example, in the monthly compliance reports from July 2023, August 2023, and March 2024. (ALLSTATE_010670-010685; 018081-018094; 013091-013102).

RFP No. 34 seeks communications from InboundCD to Allstate via the Allstate email address associated with complaint management. Plaintiff purports to be seeking emails related to the complaint management system to determine Allstate's knowledge of and alleged failure to stop InboundCD's conduct. However, Allstate investigated and produced emails related to any complaint against InboundCD that could be located based on the search parameters it used. In an October 3, 2025 email, Allstate's counsel provided Plaintiff's counsel with a list of custodians and search term and the time period, all used as the search parameters for Allstate's collection and

review of documents. Plaintiff's counsel never objected or otherwise commented on Allstate's search parameters and had previously informed Allstate's counsel that it would not negotiate search terms and custodians. Amongst the custodians proposed by Allstate was "DNC Investigator." When agents became aware of or believed that there has been a TCPA violation or a complaint regarding an improper solicitation under the TCPA, they were advised to email the DNC Investigator email which would then alert Allstate's in-house counsel about the potential issue and may trigger an investigation. Here, upon receipt of Plaintiff's claims, Naulls emailed the DNC Investigator email, which prompted Allstate's in-house counsel, with the assistance of Alan Wroblewski and Tom Witte, to investigate Plaintiff's claims. As such, Allstate did pull the DNC Investigator inbox for the requisite time period and search for complaints relating to InboundCD. Given the confidential and privileged nature of certain communications, however, they were noted on the privilege log.

RFP No. 36 seeks documents related to the return of leads or credits being provided for bad leads. Allstate has produced documents responsive to this request. Allstate produced email communications between Deborah Naulls and InboundCD in which Ms. Naulls requested that, considering the issues with InboundCD's platform and the issues with the leads being provided, InboundCD issue her a refund for its services. In addition to providing documentation on this issue, Plaintiff also deposed Ms. Naulls who further testified to the fact that she requested a refund from InboundCD because she was unhappy with their services. To the extent Plaintiff is arguing that they are entitled to every Allstate agent who may have requested a refund from InboundCD, again such a request is overly broad and is not proportional to the needs of this case.

Second, Plaintiff argues that Allstate failed to conduct a reasonable search and/or withheld responsive documents because Plaintiff asserts that she identified "complaints and investigations,

including allegations in other lawsuits that InboundCD was engaged in robocalling in violation of the TCPA on behalf of Allstate." (Mot., p. 12). While Plaintiff implies she identified several complaints, investigations, and lawsuits, she only references one in her Motion, *Alec Farwell v. Navlan LLC*, *et al,* Case No. 20STCV23613 (Supr. Ct. LA, June 23, 2020). The case involved an alleged wrongful termination and retaliation claim filed in the Superior Court of California in Los Angeles by a former InboundCD employee. The case was initiated in June 2020 and was dismissed in September 2020. Given the date of the lawsuit, it is outside of the temporal scope of Plaintiff's discovery requests, which is four years prior to the date of the initiation of the case. As such, the relevant time period was for April 14, 2021 through present and therefore, any documents related to this lawsuit were outside of the relevant time period and are not responsive to any request.

This lawsuit would also not be relevant to establish Allstate's knowledge about InboundCD's marketing practices prior to and during the calls at issue in the lawsuit. Upon reviewing the docket, the Court made no findings as to whether InboundCD engaged in any improper marketing practices. The case concluded with a dismissal by Farwell. As such, the unsubstantiated allegation alleged in this dismissed action bears no relevance to this instant case. Finally, Allstate looked and could not reasonably locate any documents in its possession pertaining to this 2020 lawsuit.

#### d. Allstate Did Not Improperly Redact its Monthly Compliance Reports.

Plaintiff is incorrect that Allstate's redactions in the monthly compliance reporting are improper. Allstate conducted monthly audits on its contracted vendors to ensure their compliance with Allstate's policies, as well as state and federal law. The monthly audits are summarized and compiled in one large document which includes information for all of Allstate's contracted vendors at that time, not only InboundCD. Allstate, in response to Plaintiff's discovery requests, produced the monthly audit reports from 2023-2025 (ALLSTATE_017327-19074); however, Allstate

redacted the monthly reports as to the other vendors who are wholly unrelated to this action. In its initial production of the monthly audit reports, Allstate redacted the information using the "PII Redacted" tag and redacting InboundCD's dialing out number. After conferring with Plaintiff's counsel regarding the redactions, Allstate re-produced the documents on March 6, 2026 in a manner in which Plaintiff can still view the results of the InboundCD audit, which includes communication with Allstate's third-party compliance vendor and data and information relating to the phone numbers used by InboundCD to make and transfer calls, and revised the tagging on reports for wholly unrelated third-party vendors to "Redacted."

Allstate's redactions were proper. The redacted information is not relevant to the claims at issue here nor is Plaintiff unduly prejudiced by the non-disclosure of that information.

**e. Allstate has Produced All Responsive Scripts in its Custody, Possession, and Control.**

Plaintiff misstates the terms of the parties' Allstate Select Vendor Program Agreement ("Agreement") between Allstate and InboundCD with regards to calling scripts. That explains how scripts are used in two different scenarios: (1) calls made exclusively on behalf of Allstate and (2) calls not made exclusively on behalf of Allstate. As noted in the Agreement, it is exceedingly rare for vendors to make calls exclusive on behalf of Allstate. More commonly, vendors such as InboundCD, make calls on behalf of several insurance carriers and, after interviewing a lead, transfer the prospective client to the insurer that best fits their need. As such, where calls are not made exclusively on behalf of Allstate, vendors like InboundCD are not provided with call scripts.

Allstate does not maintain a script library, nor does the Agreement reference any such library of scripts. (**Ex. B**, ¶7). Allstate, however, is aware of two scripts that Inbound does use: a script for handling Do Not Call Requests and its own personal call script for interviewing

prospective clients — which has been produced to Plaintiff. (*See* ALLSTATE___019192-95; *see also* (**Ex. B**, ¶7)). Allstate has sufficiently and properly responded to RFP Nos. 12 and 33, and as a result, Plaintiff's Motion to Compel should be dismissed as to these requests.

**f. The Documents Logged and Withheld by Allstate are Protected from Disclosure as a Matter of Law**

In the Seventh Circuit, the common-interest privilege requires two elements. First, parties must undertake a joint effort with respect to an identical legal interest, as opposed to a business or rooting interest. *Pampered Chef v. Alexanian,* 737 F. Supp. 2d 958, 964-965 (N.D. Ill. 2010). Second, the withheld communications must be made to further the ongoing legal enterprise. *Id.* The privilege specifically requires that the person with whom privileged information is shared must have an identical, not merely similar, legal interest in the subject matter of the communication. *Id.* The communication must be made while furthering the ongoing, common enterprise. *Id.* This doctrine protects attorney-client privileged communications that are shared between parties who have aligned legal interests in a particular matter, ensuring that such strategic coordination does not waive the underlying privilege. *Id.*

Here, because the common-interest privilege protects attorney-client privileged communication, Allstate has sufficiently demonstrated that attorney client privilege attaches to the communications. The communications at issue are between Alan Wroblewski and Tom Wittte of Allstate, on the one hand, and InboundCD's CEO Ryan Daniel, on the other hand. In July 2024, Plaintiff contacted Allstate via email alleging a TCPA violation, the same allegations contained in her Complaint. (**Ex. B**, ¶9). Upon receipt of the complaint, Allstate's legal department investigated. (*Id.*) Mr. Wroblewski, working with and at the direction of Allstate's in-house legal counsel, led the investigation. (*Id.*) Mr. Wroblewski is an Allstate employee in the Risk and Compliance department at the company. (*Id.*) Due to the nature of his role, Mr. Wroblewski often works with

the in-house lawyers to investigate and resolve TCPA complaints. (*Id.*) In this capacity, and per Allstate's counsel's direction, Mr. Wroblewski communicated with InboundCD to investigate the merits of Plaintiff's complaint. (*Id.* ¶9). Similarly, Tom Witte, in conjunction with Mr. Wroblewski and at the direction of Allstate's counsel, communicated with InboundCD in furtherance of the investigation. (*Id.* ¶10). Even though Mr. Wroblewski and Mr. Witte are not attorneys, because they acted at the direction of, and as conduits for, Allstate's in-house counsel in its investigation of Plaintiff's TCPA complaint, attorney-client privilege is established and protects their communications. *See Parneros v. Barnes & Noble, Inc.,* 332 F.R.D. 482 (2019); *In re Kellogg Brown & Root, Inc.,* 756 F.3d 754 (2014).

During this time, Allstate and InboundCD did undertake a joint effort with respect to responding to Plaintiff's TCPA complaint. (**Ex. B**, at ¶11). As such, at the time of these ongoing communications, Allstate's legal department (via Mr. Wroblewski) and InboundCD were working together to collect information and data in furtherance of the same legal enterprise, responding to Plaintiff's unfounded allegations. *Id.* Therefore, the two requisite elements have been met to establish that the common-interest privilege applies to those communications and Plaintiff's Motion to Compel should be denied as to RFP Nos. 18 and 40.

## IV. CONCLUSION

For the foregoing reasons, Defendant Allstate Insurance Company requests that the Court deny Plaintiffs' Motion to Compel Discovery.

DATED: April 21, 2026.

Respectfully submitted,

**AKERMAN LLP**

*/s/ Jani K. Mikel*
**JANI K. MIKEL, ESQUIRE**
Illinois Bar No. 6331445

71 South Wacker Drive, 47th Floor
Chicago, Illinois 60606
Telephone: (312) 634-5700
Facsimile: (312) 424-1900
Primary Email: jani.mikel@akerman.com
Secondary Email: elida.asa@akerman.com

and

**RYAN ROMAN, ESQUIRE**
Florida Bar No. 25509
201 East Las Olas Boulevard, Suite 1800
Fort Lauderdale, Florida 33301
Telephone: (954) 463-2700
Facsimile: (954) 463-2224
Primary Email: ryan.roman@akerman.com
Secondary Email: lauren.chang-williams @akerman.com

*Counsel for Defendant Allstate Insurance Company*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on April 21, 2026, the foregoing document was filed with the Court's electronic filing system on the CM/ECF system which will send a notice of electronic filing to all counsel of record.

*/s/ Jani K. Mikel*
**JANI K. MIKEL, ESQUIRE**
Illinois Bar No. 6331445