**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| KIMBERLY STARLING, on behalf of herself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ALLSTATE INSURANCE COMPANY,<br><br>Defendant. | Case No.: 1:25-CV-4000<br><br>Honorable Judge Matthew F. Kennelly |

**JOINT STATUS REPORT**

Plaintiff Kimberly Starling ("Plaintiff") and Defendant Allstate Insurance Company ("Allstate") (collectively, the "Parties") have conferred and hereby file this Joint Status Report per the Court's June 23, 2026 Order [Dkt. 59]. The Parties state as follows:

To resolve the discovery dispute concerning Plaintiff's Requests for Production Nos. 10–11, 12, 18, 22, 40–41, 48, 50, and Interrogatory Nos. 12–13, the Court has ordered the Parties to conduct a sampling of Allstate agencies that used Allstate Select Vendor Program Supplier Navlan PR, LLC d/b/a InboundCD ("InboundCD") to receive transfers of insurance prospects during the Class Period.

## I. PLAINTIFF'S STATEMENT

On July 6, 2026, Allstate disclosed a complete list of Allstate agencies and their alphanumeric ID numbers, and provided its estimation that a total of 206 Allstate agencies make up the pool of relevant Allstate agencies that used InboundCD's services since November 8, 2022 (rather than the 27,000 agencies that Allstate repeatedly invoked in discovery objections to

erroneously assert that Allstate would suffer an extreme burden if it had to search the records of each and every agency).

On May 29, 2026, Allstate produced spreadsheets purporting to be weekly transaction reports showing lead transfers that were submitted to Allstate by InboundCD. On a review of the lists, they appear to be incomplete and/or modified. Specifically, the spreadsheet for the week during which Plaintiff alleges to have been called in violation of the TCPA shows a total of two lead transfers to the Deborah Naulls Agency, and neither is the call with Plaintiff. In contrast, the call detail records produced by Spectrum—the telephone carrier for the Deborah Naulls Agency—show dozens of calls between InboundCD and the Deborah Naulls Agency during this same period of time. The discrepancy suggests to Plaintiff that the lead lists, which are essentially after-the-fact reports submitted by InboundCD to Allstate, are not genuine or reliable documents. Accordingly, Plaintiff asks that the proposed sampling be treated as preliminary and subject to supplementation, should new evidence reveal that other Allstate agencies have relevant and proportional information.

Furthermore, according to the publicly available online sample size calculator tool calculator.net, for a population size of 206 agencies which Allstate estimates, the sample size must be 135 to achieve a margin of error of 5% and a confidence level of 95%. Any sampling in the ranges proposed by the Parties would not meet these generally accepted statistical standards and should, for this reason also, be viewed as preliminary and subject to supplementation.

With those caveats, Plaintiff proposes that, initially, 20 agencies be selected as follows:

- 5 agencies that received a transfer from InboundCD on July 16, 2024, (the date Plaintiff was also robocalled and transferred to the Deborah Naulls Agency). Plaintiff counts 18 agencies in total that received transfers from InboundCD on July 16, 2024, including the Deborah Naulls Agency.

- 5 Texas agencies that received a transfer from InboundCD between November 8, 2022 and July 16, 2024.
- 10 agencies chosen at random that received a transfer from InboundCD between November 8, 2022 and July 16, 2024.

Based on Allstate's statement below, the Parties are in general agreement regarding the sampling of these 20 agencies.

Despite this lawsuit, InboundCD's evasion of Plaintiff's subpoenas, and Allstate's claims that InboundCD repeatedly breached its agreement with Allstate (including failing to keep audio recordings, using Allstate's name in prerecorded messages to consumers without their consent, and placing telemarketing calls to Plaintiff's telephone number registered on the Do Not Call List, etc.), InboundCD continues to enjoy the status of an "Allstate Select Vendor Program Supplier." To account for the possibility that InboundCD's practices changed after Allstate received Plaintiff's complaint, any Allstate agencies that did not receive a transfer from InboundCD before July 16, 2024, should be excluded from the proposed sampling at this time.

Finally, Plaintiff requests that, after the production is complete, Allstate provide a declaration of time and costs incurred for Allstate to search its email and communications systems, its Lead Manager platform, and Quoting Systems, and other Allstate sources and locations of responsive information, so that the Parties and the Court can assess the proportionality of any future discovery into additional Allstate agency records. To the extent that Plaintiff's discovery requests seek documents and information not in Allstate's own systems, Allstate should be ordered to require its Allstate agents to provide responsive information within 30 days.

Finally, regarding the subpoena enforcement action in Puerto Rico, Plaintiff filed a response to InboundCD's recently filed motion to quash and awaits a decision. In addition, earlier today

Allstate provided an undated letter from InboundCD to Allstate claiming that a third party, LeadGen Corp., placed all outbound calls for InboundCD for the past 15 years. InboundCD previously claimed that it placed all outbound calls manually with its own telemarketers and that it suspected Plaintiff used call forwarding because InboundCD allegedly had no record of calling Plaintiff's cell phone number. The timing of this revelation, immediately following the *Hossfeld* decision, is highly questionable and the factual circumstances between *Hossfeld* and this action are quite different.

## II. ALLSTATE'S STATEMENT

To date, Allstate has produced 22,685 pages of documents in response to the voluminous discovery requests served by Plaintiff. Plaintiff now seeks to further burden Allstate in a case where there is a single alleged call to Plaintiff by a likely sub-vendor (LeadGen) in an environment where the Seventh Circuit just ruled on this very issue on June 24, 2026 in *Robert Hossfeld v. Allstate Insurance Company*, Nos. 25-1518 & 25-1672 (7th Cir.) (the "*Hossfeld* Decision"). In the Hossfeld Decision, the Seventh Circuit reversed the district court's grant of summary judgment in favor of the plaintiff on its TCPA claims and directed the district court to enter summary judgment in favor of Allstate. The issue present in *Hossfeld* is substantially identical to the facts of this case – a sub-vendor which had no apparent or actual authority given to them by Allstate – made calls in violation of the TCPA. Plaintiff Hossfeld sought to hold Allstate liable for those calls and the district court had granted summary judgment in favor of plaintiff and against Allstate. Just two weeks ago, the Seventh Circuit entered its decision finding that it was reversible error and that Allstate was not liable under any agency theory or otherwise. The Seventh Circuit also affirmed the district court's denial class certification in that action.

Rather than continue to engage in broad, burdensome discovery, the Court should expedite a summary judgment motion on the issues presented in the *Hossfeld* case as they apply to the instant

action. If any discovery is deemed necessary, it should be limited to the issues that will require resolution of whether these claims are barred by the Seventh Circuit's most recent decision.

Finally, Allstate proposed to Plaintiff a protocol whereby 10 agents are selected at random to provide documents and information responsive to Requests for Production Nos. 10–11, 12, 18, 22, 40–41, 48, 50, and Interrogatory Nos. 12–13. Allstate is amenable to the proposal from Plaintiff above to use a sample set of 20 agencies but objects to the other portions of Plaintiff's statement, including with respect to providing a declaration. Allstate further objects to the speculative statements that certain documents are incomplete or have been altered, which is a serious accusation that must be supported by actual evidence of wrongdoing. While those accusations appear to be leveled against non-party InboundCD, which further exhibits that they and any sub-vendor have acted without actual or apparent authority, it is not appropriate to level such accusations absent proof.

Date: July 7, 2026

*/s/ Max S. Morgan*
Max S. Morgan, Esq.
THE WEITZ FIRM, LLC
1515 Market Street #1100
Philadelphia, PA 19102
Tel: (267) 587-6240
Fax: (215) 689-0875
max.morgan@theweitzfirm.com

Thomas A. Zimmerman, Jr.
Jeffrey D. Blake
Zimmerman Law Offices, P.C.
77 W. Washington Street, Suite 1220
Chicago, Illinois 60602
Telephone: (312) 440-0020
Facsimile: (312) 440-4180
tom@attorneyzim.com
jeff@attorneyzim.com

*Counsel for Plaintiff and the Putative Classes*

*/s/ Ryan Roman*
JANI K. MIKEL
**AKERMAN LLP**
Illinois Bar No. 6331445
71 South Wacker Drive, 47th Floor
Chicago, Illinois 60606
Telephone: (312) 634-5700
Facsimile: (312) 424-1900
Email: jani.mikel@akerman.com
Email: elida.asa@akerman.com

**- and –**

RYAN ROMAN
** Admitted Pro Hac Vice*
**AKERMAN LLP**
201 East Las Olas Boulevard, Suite 1800
Fort Lauderdale, Florida 33301
Telephone: (954) 463-2700
Facsimile: (954) 463-2224
Email: ryan.roman@akerman.com
Email: lauren.chang-williams@akerman.com

*Counsel for Defendant Allstate Insurance Company*